IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID CRABTREE,

       Plaintiff,

v.                                                            Case No.: 6:12-cv-656-Orl-37GJK

CENTRAL FLORIDA INVESTMENTS, INC.
DEFERRED COMPENSATION PLAN,
and the CENTRAL FLORIDA INVESTMENTS, INC.
DEFERRED COMPENSATION PLAN
ADMINISTRATOR, sued herein as John Doe,
Individually, as Plan Administrator, and
CENTRAL FLORIDA INVESTMENTS, INC.,
a Florida Corporation,

       Defendants.
_____/

## CFI'S MOTION FOR A PROTECTIVE ORDER
## FROM PLAINTIFF'S THIRD-PARTY SUBPOENAS

Defendants / Counter-Plaintiff (collectively "CFI"), pursuant to Federal Rule of Civil Procedure 26(c), moves for a protective order as to the Non-Party Subpoenas Plaintiff, David Crabtree ("Crabtree" or "Plaintiff"), served on two non-parties to this lawsuit, LV Tower 52, LLC ("LV Tower"), and Resort Finance America, LLC ("Resort Finance") ("the Non-Parties"). The subpoenas seek the discovery of confidential business information, including a Global Restructuring Agreement that numbers over 1,000 pages including exhibits, regarding a highly sensitive debt and loan restructuring agreement between Westgate Resorts (the parent company to the Defendants in the above-styled action) and certain non-parties to this lawsuit, including LV Tower and Resort Finance, which occurred nearly seventeen months *after* Plaintiff resigned from CFI.

1

This Motion must be granted because: **1**) the subpoenas seek the discovery of documents that have absolutely no relevancy to any of the claims or defenses at issue in this lawsuit; **2**) the documents sought contain confidential business records and Crabtree is now CEO for one of CFI's competitors, Planet Hollywood, thus, allowing him unfettered access to this irrelevant but highly confidential business information will result in great harm to CFI; **3**) the subpoenas were served by Plaintiff with the intent to harass, annoy, and embarrass CFI; **4**) the Non-Parties timely objected to the subpoenas; and, **5**) Plaintiff failed to provide the 14 days allotted for CFI to object, as contemplated by Rule 45(c)(2)(B). For these reasons, and as stated further below, this Court should enter a Protective Order prohibiting Plaintiff from being granted access to the information sought in the Non-Party subpoenas.

## Supporting Facts

1. After business hours on February 20, 2013 Crabtree served CFI with a Notice of non-party production, which included copies of subpoenas Crabtree later served on LV Tower and Resort Finance.[1]

2. The two non-party subpoenas are identical and seek the production of the following information:

>   A. A copy of the Global Restructuring Agreement dated on or about November 21, 2011 to which LV Tower 52, LLC, and any of the following entities were among the parties: Westgate Resorts, Ltd.; Westgate Planet Hollywood Las Vegas, LLC; CFI Resorts Management, Inc.; Central Florida Investments, Inc.
>
>   B. A copy of any agreement signed in or about November 2011 wherein any rights, title and/or ownership were assigned, granted, conveyed, given, transferred, relinquished, or sold to LV Tower 52, LLC by any of the following entities: Westgate Resorts, Ltd.; Westgate Planet Hollywood

---

[1] As a threshold matter, the deadline for compliance was set at March 1, 2013, giving CFI only nine days to Object, far less time than the 14 day minimum required under Fed.R.Civ.P. 45(c)(2)(B).

Las Vegas, LLC; CFI Resorts Management, Inc.; Central Florida Investments, Inc.

3. Although the subpoenas have two separate requests, the only "agreement" of which CFI is aware that is responsive to this request is the Global Restructuring Agreement dated November 21, 2011. It appears that the second document request is merely a catch-all request.

4. The November 2011 Global Restructuring Agreement Crabtree is seeking to discover has no relevancy or logical nexus to the claims or defenses in this lawsuit. As Crabtree acknowledged in his Complaint, he resigned as the VP of Sales & Marketing for CFI on June 8, 2010 and was hired by Robert Earl, to serve as the CEO of Planet Hollywood. (Doc. 1, ¶ 16 and Exhibit A.) As detailed in CFI's Counterclaim, CFI and Planet Hollywood have had an adversarial relationship since 2007, during and after Crabtree's employment with CFI.

5. By way of background, the Global Restructuring Agreement involved a massive debt and loan restructuring agreement entered into by approximately 50+ separate Westgate-related entities (Westgate is CFI's parent company), as well as at least seven lenders and multiple other businesses spread throughout the county, all of which revolved around the re-financing of Westgate's debt. The re-financing of the debt, most of which has been paid back now in full, was necessary due to the recent collapse of the lending market in the United States. The value of the restructuring deal exceeded $400 million. The $400 million debt restructuring deal was extremely complex. The Global Restructuring Agreement alone exceeds 1,000 pages in length, including exhibits. The deal involved multiple lenders (approximately 7), and included national banks, multiple guarantors, hundreds of millions of dollars in construction loans, receivable loans, parent receivable loans, bank term loans, bridge notes, assignment of various deeds of trust, assumed contracts, modifications of previous master loans, *etc*. All of these terms and

conditions, and many, many others, are outlined in the 1,000+ pages of Global Restructuring Agreement and exhibits thereto.

6. The Global Restructuring Agreement was executed on November 21, 2011. The drafting and negotiation of this Global Restructuring Agreement did not fully commence until October 11, 2011, almost 16 months after Crabtree's resignation from CFI. Crabtree was not a party to the Agreement, nor was he involved with drafting, negotiating or executing the Global Restructuring Agreement. He was not an intended or express beneficiary or the party and none his claims or CFI's counterclaims were the subject of the Agreement, let alone relevant to the Agreement. Simply stated, the Global Restructuring Agreement has absolutely no relevancy to Crabtree's claim for the recovery of the deferred compensation under ERISA for money he claims to have earned *while working at CFI*.[2] Not only is this information completely irrelevant, it will yield absolutely no relevant or admissible information.

7. The only logical reason for requesting this information is for Crabtree to try and get a business advantage to which he normally would not be entitled. Specifically, Crabtree is a business adversary of CFI. The information contained in the requested documents is highly-sensitive information that provides insight into the business structure and tactis used by CFI, which would never be produced in the normal business world, and has zero relevancy to the claims being litigated.

8. Likewise, Crabtree cannot argue that the Global Restructuring Agreement in any way relates to CFI's counterclaim against him. CFI has sued Crabtree for breach of fiduciary duty as a result of actions Crabtree took *while he worked at CFI* during a period of time when CFI and Crabtree's current employer, Planet Hollywood, were involved in adversarial business

---

[2] (Doc. 1); Crabtree is also seeking a host of other unspecified monetary damages, including $110 a day in damages under 29 U.S.C. §1132(c)(1)(B), interest on the $700,000.00, and attorneys' fees and costs.

deals. Again, the Global Restructuring Agreement has no impact on Crabtree's fiduciary breaches against CFI, which we have argued ultimately helped him land the title of CEO of Planet Hollywood, as those breaches were committed prior to the execution of the Agreement.

9. Nor may Crabtree cogently posit that the Global Restructuring Agreement has any relevancy to any of the defenses or affirmative defenses raised in this lawsuit. Based upon a review of Crabtree's affirmative defenses, it appears that Crabtree has taken the rather bizarre and legally infirm position that CFI has somehow "waived" its right to pursue its compulsory counterclaim against Crabtree because, according to Crabtree, "CFI sold, gave, turned over and/or assigned to its lender(s) and/or their related entities all of CFI's interests in (and upon information and belief any claims or rights of CFI related to) the Las Vegas property which was the subject of the alleged conduct claimed by CFI against Crabtree."[3]

10. This argument is completely unsound. The Global Restructuring Agreement did not and was never intended to release claims against Crabtree. Crabtree, a sophisticated and experienced business man, cannot seriously argue this point. The Global Restructuring Agreement includes a delivery of the Las Vegas property ("the PH Towers"), and the PH Tower assets to CFI's lenders. Nothing in the Global Restructuring Agreement required CFI to relinquish claims it may have against former employees, like Crabtree, for fiduciary breaches wholly unrelated to the Global Restructuring Agreement. To suggest that CFI somehow waived every claim it may have against any of the thousands of employees who worked for it at PH Towers, or on any matter related to the PH Tower, is simply ludicrous.

11. Moreover, Crabtree's implicit claim that CFI relinquished or waived its counterclaim against him when it refinanced its debt is fundamentally flawed when the totality of

---

[3] (*See* Doc. 64, p. 10, Crabtree's Sixteenth Affirmative Defense); *see also* Crabtree's Twenty-Third and Twenty-Seventh Affirmative Defenses.

the debt restructuring at issue in the Agreement is taken into account. If CFI's counterclaim against Crabtree were truly an "asset" subject to the Global Restructuring Agreement then, likewise, the monies he claims to be owed under the DCA are a "debt" under the Global Restructuring Agreement and he has sued the wrong Defendants. Obviously, however, such a notion is absurd. Equally as absurd is Crabtree's suggestion that CFI lacks standing to bring a counterclaim against him because of some kind of non-existent "waiver."

12. However, to the extent that the documents sought in Crabtree's Non-Party subpoenas have any remotely marginal relevancy to the claims or defenses in this lawsuit, which they don't, such minimal relevancy is completely outweighed by the sensitive and private nature of the financial records requested. The Global Restructuring Agreement contains highly sensitive information on CFI, including a breakdown of CFI debt at the time the agreement was executed, what notes were held by various CFI lenders, and specific information, including interest rates, on those loans. Allowing for the production of this information will result in great harm to CFI. This is particularly true considering that: 1) Crabtree, the party requesting the confidential information, is the CEO for Planet Hollywood, one of CFI's competitors; and 2) Crabtree refused to enter into a confidentiality agreement, a refusal CFI must presume is indicative of the possibility that the information contained in those documents *will not be kept confidential* if the documents are produced.

13. LV Tower and Resort Finance American have, contemporaneous with the filing of this Motion, served their own objections on all counsel of record. For the convenience of the Court, a true and correct copy of those objections are attached hereto as Exhibit A and fully incorporated by reference.

14. Crabtree failed to provide CFI with the 14 days required by Rule 45(c)(2)(B) to object to the subpoenas.

## Argument

**A. Legal Standard.**

The Rules of Civil Procedure provide one party a vehicle to challenge how another party conducts discovery through Federal Rule of Civil Procedure 26 ("Rule 26"). Rule 26(c) provides that a court "for good cause shown ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...."[4] A party has standing to move for a protective order if the subpoenas seek irrelevant information.[5] When evaluating the propriety of a Motion for Protective Order, a district court must balance the interest of the party seeking discovery against the non-party's interest in maintaining the confidentiality of the information sought, as well as the burden to the non-party of complying with the discovery request.[6] Whether good cause exists for a protective order is a factual matter to be decided by the nature and character of the information in question.[7]

The **scope** of discovery is also governed by Rule 26, which allows "discovery regarding any matter, not privileged, which is relevant to the subject matter of the pending litigation."[8] A matter is deemed to be irrelevant if it does not pertain to a claim or defense.[9] Crabtree, as the party seeking the discovery here, has the sole burden proving its relevance.[10] The scope of discovery is not without limits.[11] Discovery must be tailored to the issues involved in the

---

[4] Fed.R.Civ.P. 26(c).
[5] *Auto-Owners Ins. Co. v. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005).
[6] *Farnsworth v. the Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985); Fed.R.Civ.P. 26(b)(2).
[7] *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1315 (11th Cir. 2001).
[8] Fed.R.Civ.P. 26(b)(1).
[9] *Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 593 F.Supp.2d 1273, 1278 (S.D. Fla. 2008).
[10] *Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed. Cir. 1993).
[11] *Rossbach v. Rundle*, 128 F.Supp.2d 1348, 1353-54 (S.D. Fla. 2000).

particular case.[12] Discovery of matters that are not reasonably calculated to lead to discovery of admissible evidence, like the Global Restructuring Agreement sought in Crabtree's subpoenas, is not within the scope of Rule 26(b)(1).[13] Therefore, the information sought in Crabtree's Non-Party subpoenas is not discoverable as it has no relationship to the claims or defenses in this lawsuit.

**B.     CFI Has Established the Required "Good Cause" Needed for a Protective Order.**

**1.     The subpoenas seek information that is irrelevant to the claims and defenses in this lawsuit.**

Although the subpoenas in this case were issued from the United States District Court for Delaware, "a protective order under Rule 26(c) can be sought/determined in the court where the underlying action is pending, as well as the court from which the subpoena issued."[14] Thus, this Court has the authority to enter the Protective Order sought herein.

More importantly, Crabtree's request is outside of the scope of discovery pertinent to this action, even under the most liberal analysis of the request.[15] The crux of Crabtree's claim centers exclusively on CFI's non-payment of his DCA after his resignation from CFI in June, 2010, which he advances under ERISA and an alternative breach of contract involving the DCA. Crabtree has argued since the inception of this suit that he complied with all his obligations under the DCA and that he should have been paid all monies earned according to the DCA after his resignation in June 2010. The Global Restructuring Agreement executed 1.5 years after his resignation has absolutely no bearing on Crabtree's ERISA or breach of the DCA claims. The existence of the Global Restructuring Agreement has absolutely no bearing to: (1) whether there

---

[12] *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570 (11th Cir. 1992).
[13] *Auto-Owners*, 231 F.R.D. at 430 (holding discovery of financial matters of non-party is grossly overbroad and irrelevant)
[14] *Morrison v. YTB Intern., Inc.* 2010 WL 1752579, *3 (S.D.Ill.,2010); *see also* Fed.R.Civ.P. 26(c).
[15] *See* Fed. R. Civ. P. 26(b)(1).

8

was a DCA between Crabtree; (2) the specific terms of the DCA; (3) whether either party complied with or breached those terms; (4) whether the breach was material; and (5) what damages, if any, are available. Therefore, the Global Restructuring Agreement contains no relevant information nor can it lead to the discovery of admissible information concerning Crabtree's own claims.

This document is similarly irrelevant to determining CFI's counterclaim for breach of fiduciary duty against Crabtree which, under Florida law, requires an analysis of the following issues: (1) the existence of a duty owed by Crabtree to CFI, (2) whether Crabtree breached that duty, and (3) damages flowing to CFI from the breach.[16] Once again, the temporal distance of 1.5 years between the Global Agreement and Crabtree's resignation negates any relevancy here. Moreover, the substance of the Global Restructuring Agreement relates exclusively to the debt CFI refinanced with several non-party lenders, including LV Tower and Resort Finance. It has no logical or logical connection to or relevancy to the DCA, or Crabtree, or the fiduciary duties Crabtree owed to CFI and breached, or the damages CFI suffered related thereto.

It is expected that Crabtree will try to somehow tie the Global Restructuring Agreement to wild speculation that CFI somehow waived its counterclaim against Crabtree when it entered into the Global Restructuring Agreement. This, as discussed in the facts, is pure non-sense. There is no such waiver and there is absolutely no reason to include such waiver as the subject matter of the Global Restructuring Agreement did not include expressly or implicitly include Crabtree's DCA or potential breaches of his fiduciary duties to CFI. CFI's compulsory counterclaim against Crabtree for breach of fiduciary duty was not one of the assets contemplated in the Global Restructuring Agreement. The only "waiver" relevant to the claims

---

[16] *Crusselle v. Mong*, 59 So.3d 1178, 1181 (Fla. 5th DCA 2011)

in this lawsuit involves the millions of dollars CFI "waived" in favor of Planet Hollywood based on Crabtree's self-serving advice. Any waiver CFI may have agreed to in the Global Restructuring Agreement nearly 1.5 years after Crabtree resigned from CFI is simply irrelevant and, thus, not discoverable. To the extent that this Honorable Court wants to review the Agreement to ensure the accuracy of this statement, CFI will produce the document for an in-camera inspection.[17]

### 2. The subpoenas seek confidential business information which, if disclosed to Crabtree, will cause CFI irreparable harm.

The Global Restructuring Agreement does not have even any tangential relevance here. More importantly, the sensitive and private nature of these financial records at issue unequivocally outweigh any marginal notion of relevancy that Plaintiff can conjure up.[18] Here, the nature and character of the information in question—the confidential business and financial records of a $400 million dollar-plus thousand-plus page Global Restructuring Agreement unrelated to the matters at issue and separate and distinct from the parties in this action—dictates granting a protective order prohibiting the discovery.[19] The disclosure of the financial information contained in the Global Restructuring Agreement will cause irreparable harm to CFI because Crabtree is the CEO of Planet Hollywood, one of CFI's competitors. Included in the 1,000+ pages of documents contained in the Agreement is a laundry list of various CFI creditors, guarantors, and lenders, all of which is highly sensitive information which if freely disclosed

---

[17] *NetJets Aviation, Inc. v. Peter Sleiman Development Group, LLC*, 2011 WL 768066, 2 (M.D.Fla.,2011) ("Clearly, the disclosure of personal financial information may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant.... As appropriate, the trial court may conduct an in-camera inspection of the subject records ... [and] may balance (on an ad hoc basis) the right to privacy and the right to know.")
[18] *See, e.g.*, Fed.R.Civ.P. 26(c)(1)(D) (allowing the court "to protect a party or person from ... undue burden" by issuing an order "forbidding inquiry into certain matters).
[19] *NetJets Aviation, Inc. v. Peter Sleiman Development Group, LLC*, 2011 WL 768066, 2 (M.D.Fla.,2011)("Because there is no basis to conclude that the personal financial information sought ... is relevant, we find that the trial court's order departs from the essential requirements of law which if uncorrected will lead to ... irreparable harm." (quoting *Straub v. Matte*, 805 So.2d 99, 101 (Fla. 4th DCA 2002).

could forever damage CFI's reputation and good will.

Likewise, CFI derives economic value from the debt restructuring and terms and conditions of the Global Restructuring Agreement. CFI has made reasonable efforts to keep this information confidential from its competitors. The Global Restructuring Agreement includes, for example, the terms and conditions of several hundred million dollars of loans, including interest rates, all of which qualify as trade secrets under section Fla. Stat. § 688.002(4). Disclosure of that information would harm CFI by revealing this information to at least one of its competitors, Planet Hollywood, and possibly others later if the information is disseminated or made available to the public on the Internet via the Court's CM/ECF system.

Moreover, the number of lenders in the United States with access to the level of funding major vacation and leisure companies, like CFI, require for large projects is extremely limited, especially in today's economic climate. If either David Crabtree or Planet Hollywood are given access to the Global Restructuring Agreement, they will essentially have a roadmap to how -- and from whom -- CFI accesses much of the cash it needs to fund its business operations. Planet Hollywood could, in turn, decide to contact those same lenders and, armed with the exact amounts and rates CFI was able to secure through months of negotiating, attempt to negotiate similar or more lucrative deals. This would be extremely prejudicial and, obviously, will cause CFI significant financial harm.

Lastly, if the Global Restructuring Agreement is produced in this case, there is nothing stopping Crabtree from filing it, for example, in a motion for summary judgment. That, in turn, would allow the general public access to this highly sensitive and confidential business information. There is simply no plausible reason to allow Crabtree access to this document.

3. **The Subpoenas were served by Plaintiff with the intent to harass or annoy CFI, as demonstrated by the fact that Plaintiff refused to enter into a**

**confidentiality agreement.**

The subpoenas served on LV Tower and Resort Finance are nothing more than a vexatious attempt to harass, annoy, and embarrass CFI by involving non-parties to this lawsuit, including CFI's lenders, LV Towers and Resort Finance America. This is evidenced by the fact that in an effort to avoid this dispute, CFI offered to produce the Global Restructuring Agreement provided that Plaintiff would agree to enter into a confidentiality agreement. That offer was rejected by Plaintiff. Instead, Plaintiff insisted that CFI produce a redacted version of the Global Restructuring Agreement, otherwise the documents had to come straight from CFI's lenders. But, Plaintiff's superfluous demand for a redacted version of the Global Restructuring Agreement was, in reality, nothing more than a feigned effort to cooperate. The Global Restructuring Agreement is over 1,000 pages long with exhibits. <u>None</u> of it is relevant, as explained herein. Thus, producing a redacted version would essentially require CFI's attorneys to spend time redacting the entire 1,000+ page document. This, obviously, would be a colossal waste of time and money. There is simply no reason for CFI -- in exchange for Plaintiff agreeing not to harass or annoy its lenders -- to have its counsel redact 1,000 pages of a document that has absolutely no relevancy to this case.

**C.     The Non-Parties timely objected to the subpoenas and Crabtree has failed to move to compel.**

Pursuant to Fed.R.Civ.P. 45(c)(2)(B), both LV Tower and Resort Finance timely objected to Crabtree's non-party subpoenas, copies of which are attached hereto as Exhibit A. Under Fed.R.Civ.P. 45(c)(2)(B):

> A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises--or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for

compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

> (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
>
> (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

To date, Crabtree has failed to move to compel the production of the material sought in his subpoenas. Unless and until he does so (and only if he is successful), neither LV Tower nor Resort Finance America are obligated to produce the Global Restructuring Agreement.

**D.      Plaintiff failed to provide the 14 days allotted for CFI to object, as contemplated by Rule 45.**

Finally, this Motion should be granted because Plaintiff served CFI with its notice of non-party subpoenas at 10:23 p.m. on February 20, 2013, but set the deadline for compliance just nine days later on March 1, 2013. By failing to provide CFI with the required 14-days to object to the subpoena allotted under Fed.R.Civ.P. 45(b)(2)(B), Plaintiff forced CFI's counsel to drop other pressing matters to immediately address Plaintiff's last minute third-party subpoenas. This too warrants granting this Motion.[20] This tactic by Plaintiff also forced CFI's lenders' counsel to draft objections to the subpoenas, which, as stated herein, were also a waste of valuable time and resources in light of the irrelevant nature of the information sought in the Subpoenas.

## Conclusion

Based upon the foregoing reasons, this Court should enter a Protective Order precluding Plaintiff from being allowed access to any of the information sought in the subpoenas served on LV Tower and Resort Finance.

---

[20] *Paul v. Stewart Enterprises, Inc.*, 2000 WL 1171120 (E.D. La. 2000); *see also* Fed. R. Civ. P. 45(c)(3)(A)(i)

13

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

Pursuant to Local Rule 3.01(g), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues. Plaintiff opposes the relief sought in this motion.

Dated this 1st day of March, 2013.

        Respectfully submitted,

        GREENSPOON MARDER, P.A.
        Attorneys for Defendants
        Capital Plaza I, Suite 500
        201 East Pine Street
        Orlando, Florida 32801
        Telephone:    (407) 425-6559
        Facsimile:    (407) 563-9665
        richard.epstein@gmlaw.com
        myrna.maysonet@gmlaw.com
        brandon.hill@gmlaw.com

        By: /s/ Brandon J. Hill
            RICHARD W. EPSTEIN
            Florida Bar No. 229091
            MYRNA L. MAYSONET
            Florida Bar No. 429650
            BRANDON J. HILL
            Florida Bar No. 37061

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of March, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Patricia R. Sigman, Esquire, SIGMAN & SIGMAN, P.A., 211 Maitland Avenue, Altamonte Springs, Florida 32701.

        By: /s/ Brandon J. Hill
            BRANDON J. HILL