UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID CRABTREE,

       Plaintiff,

v.                                     Case No.  6:12-cv-656-ORL-31TBS

CENTRAL FLORIDA INVESTMENT, INC.
DEFERRED COMPENSATION PLAN, and
the CENTRAL FLORIDA INVESTMENT,
INC., DEFERRED COMPENSATION PLAN
ADMINISTRATOR, sued herein as John Doe,
individually and as Plan Administrator,

       Defendant.

_____/

ORDER

      This case is before the Court on the following motions:

          (1) Plaintiff's Amended Motion for Protective Order and
          Incorporated Memorandum of Law and Request for Oral
          Argument (Doc. 52);

          (2) CFI's Motion for Leave to Amend its Counterclaim to Assert
          a Claim for Rescission under ERISA (Doc. 58);

          (3) CFI's Motion to Compel Supplemental Discovery Responses
          from Plaintiff David Crabtree (Doc. 65); and

          (4) CFI's Motion to Extend Discovery Deadline and Request for
          Oral Argument on this Motion (Doc. 66).

I. Background

      Plaintiff, David Crabtree ("Crabtree"), was employed by Defendant, Central

Florida Investment, Inc. ("CFI") as its Chief Operating Officer of Sales & Marketing.

(Doc. 1 ¶ 7).  CFI is the plan sponsor of the Central Florida Investments Inc. Deferred

Compensation Plan ("Plan") which is an employee pension benefit plan within the

meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1002(2).  (Id. ¶¶ 8, 11).  The Plan is a "top hat" plan as defined in ERISA. (Doc. 25 ¶ 56).  One of Crabtree's employment benefits was participation in the Plan. (Doc. 1 ¶¶ 8, 10, 14).  In 2008, Crabtree and his colleagues, Thomas F. Dugan and Mark Waltrip entered into a Deferred Compensation Agreement ("Agreement"), with CFI.  (Id. ¶¶ 11-13).  The Agreement is an unfunded arrangement which provides for the payment of deferred compensation under the Plan to Crabtree within 90 days of his final day of employment by CFI.  (Id. ¶¶ 13, 15).

CFI controlled Westgate Planet Hollywood Las Vegas, LLC ("Westgate").  (Doc. 25 ¶ 72).  CFI had a mostly adversarial business relationship with Planet Hollywood International, Inc. ("Planet Hollywood") and Crabtree's duties included acting as CFI's primary liaison and negotiator with Robert Earl ("Earl"), Chief Executive Officer of Planet Hollywood.  (Id. ¶¶ 68, 72).  In 2009, Crabtree recommended to David Siegel ("Siegel"), the President of CFI, that Westgate accept a settlement in which it agreed to waive millions of dollars in claims against Planet Hollywood.  (Id. ¶¶ 67, 68, 72). Crabtree convinced Siegel to accept the terms of the settlement and on December 16, 2009, Westgate waived its claims against Planet Hollywood but the relationship between the companies remained hostile.  (Id. ¶¶ 72, 74).

On June 8, 2010, Crabtree resigned from CFI and went to work as President and Chief Operating Officer of Planet Hollywood.  (Docs. 1 ¶ 16; Doc. 25 ¶¶ 72-73). Since resigning from CFI, Crabtree has not received any benefits from the Plan.  (Doc. 1 ¶¶ 18, 20-21, 27).  On January 13, 2012, he requested copies of Plan documents which have not been provided.  (Id. ¶¶ 31-32).  Now, he is suing CFI in Count I for its

alleged failure to provide him the benefits he is due under the Plan; in Count II for the

Plan administrator's alleged failure to comply with his request for Plan documents;

and in Count III for alleged breach of the Agreement.

Defendants answered Crabtree's complaint, asserted multiple affirmative

defenses, and CFI filed a counterclaim.  (Doc. 25).  Several of Defendants' affirmative

defenses and CFI's counterclaim are premised on allegations that Crabtree was a

disloyal employee.  (Id.)  Specifically, Defendants allege that while Crabtree was

employed by CFI, he secretly used his position to negotiate his current employment at

Planet Hollywood.  (Id. ¶¶ 73, 75).  Defendants further allege that after Crabtree went

to work for Planet Hollywood, it made claims against Westgate and continued to

benefit at the expense of CFI.  (Id. ¶¶ 76-77).

Count I of CFI's counterclaim alleges that Crabtree breached his fiduciary duty

to CFI; Count II sought rescission of the Agreement; and Count III requested a

declaratory judgment that Crabtree's resignation can be ignored and he can be

discharged for cause.  (Id. ¶¶ 84-103).  Crabtree motioned the Court to strike several

of Defendants' affirmative defenses and to dismiss CFI's counterclaim.  (Doc. 31).

The motion was referred to me, and I issued a report and recommendation ("R&R")

that the district judge deny the motion to strike and grant the motion to dismiss CFI's

counterclaims for rescission and declaratory judgment.  (Doc. 39).  The parties

objected to the R&R (Docs. 40, 42) and while their objections were pending, CFI

sought leave of Court to amend its counterclaim (Doc. 43).  The motion to amend was

denied without prejudice as being premature until the district judge ruled on the

objections to the R&R.  (Doc. 44).

Crabtree deposed Siegel, who testified as follows:

Q.  Why is it that David Crabtree has not been paid his deferred compensation?

A.  I don't believe he's due deferred compensation.

Q.  Why?

A.  Primarily he was the - - my representative in some very serious negotiations with OpBiz, Planet Hollywood and Robert Earl.  And while he was - - to the best of my belief, while he was negotiating for me, he was also negotiating to go to work for the enemy.

Q.  Why is it that you - - or upon what information do you base that belief?

A.  Well, we're still doing discovery.  So, so it will come out.

Q.  Is there any information that you have right now upon which you base that belief?

A.  Just strong suspicion.

Q.  And what is your suspicion based upon?

A.  As I said, he went to work for the very people that he was advising me to settle tens of millions of dollars in, in claims against and during a period when, when the people he went to work for were, were still going after me for fees and licensing. It's, it's just very suspicious.
. . . .

Q.  And again do you have any information upon which you base that suspicion?

A.  We're doing discovery.

Q.  As of the time that you sit here right now, what information do you have that you based that suspicion upon?

A.  Only suspicion.

 . . . .

-4-

> Q. You have no specific evidence or information to support your suspicions do you?
>
> A. I have no evidence.  We're doing discovery.
> . . . .

(Doc. 47-3 at Page 7, Line 9 thru Page 8, Line 8; Page 10, Line 24 thru Page 11, Line 4; Page 64, Lines 4-6).

After he deposed Siegel, Crabtree filed his amended motion for a protective order and asked the Court to prohibit CFI from engaging in any discovery on any of its affirmative defenses or counterclaim that are founded on CFI's allegations of disloyalty.  (Doc. 52).  Crabtree's motion includes a request that the Court block non-party subpoenas issued to Planet Hollywood; Crabtree's law firm, Sigman & Sigman, P.A. (the "Firm"); the lawyer for Planet Hollywood; and Earl.  (Id.)  Crabtree also sought protection from CFI's interrogatories numbered 3-13 and 15, and its requests for production numbered 3-12, 17, 23-29 and 38-45.  (Id.)  CFI in turn, has motioned the Court to compel supplemental discovery from Crabtree including better answers to interrogatories 4-6, 11 and 15.  (Doc. 65).

On December 14, 2012, the district judge overruled all objections and adopted and confirmed the R&R.  (Doc. 57).  In her order, the district judge gave CFI seven days within to amend its counterclaim for rescission and said if a motion to amend was filed, the Court would consider the deadlines in its Case Management Order, and whether the proposed amendment was proper under FED. R. CIV. P. 15.  (Id.)  CFI timely filed its motion for leave to amend its counterclaim to add a count for rescission under ERISA.  (Doc. 58).  Crabtree opposes the motion on the grounds that it is untimely, it would unduly prejudice Crabtree, the amended

counterclaim fails to join indispensable parties, and any attempt at amendment would be futile.  (Doc. 61).

Discovery in this case closed on March 4, 2013; dispositive motions are due no later than April 1, 2013; and trial is set during the term beginning November 4, 2013.  (Doc. 30).  CFI seeks a 60-day enlargement of discovery based upon Crabtree and Planet Hollywood's alleged failure to turn over critical information. (Doc. 66).

On March 8, 2013, the Court heard oral argument on the pending motions (Doc. 73) and during the hearing, CFI sought to bootstrap on to its motion to compel, a request that the Court order Crabtree to consent to AOL producing emails from his account to CFI.  It also became clear that the parties disagree about whether CFI has completed its deposition of Crabtree or if it can reconvene the deposition after these pending discovery issues are decided.

While discussing its counterclaim at the hearing, CFI admitted that it is unable to present any evidence to support its allegations of disloyalty but it says, it has presented a sequence of events that "ought not to happen." CFI argues that if it is right, then by the very nature of what transpired, Crabtree, Earl and Planet Hollywood willfully concealed their actions from CFI.  It also complains that Crabtree has stonewalled discovery and that it has not obtained discovery from Earl and Planet Hollywood yet.

## II. Analysis

A.   <u>CFI's Motion for Leave to Amend its Counterclaim to Assert a Claim for Rescission under ERISA (Doc. 58)</u>

-6-

The logical place to begin is with CFI's motion for leave to amend its counterclaim.  While this case is not at the stage where CFI is expected to prove its allegations, the fact remains that discovery is closed and CFI has no evidence to support Siegel's suspicions concerning Crabtree's purported disloyalty.  All CFI can point to is a sequence of events which it argues, should not have happened unless something was amiss.  Because CFI needs additional discovery to determine whether it has a factual basis to assert a claim against Crabtree, the allegations in Count II of its proposed amended counterclaim are not "enough to raise a right to relief above the speculative level."  Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007).

Although this case is not before the Court on a motion for sanctions, cases under FED. R. CIV. P. 11 are instructive.  Rule 11(b)(3) provides that when a person signs a pleading, they are certifying "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation and discovery."  Courts have imposed Rule 11 sanctions in cases where the pleader based its claims on suspicions or assumptions.  United Food & Commercial Workers v.  Armour and Co., 106 F.R.D. 345, 347-48 (N.D. Cal. 1985); Woodford by and through Houston v. Gavin, 105 F.R.D. 100, 105 (N.D. Miss. 1985).  Sanctions have also been imposed when the pleader filed a lawsuit and then sought to develop a cause of action.  Weil v. Markowitz, 108 F.R.D. 113, 116 (D.D.C. 1985); Foster v. Michelin Tire Corp., 108

-7-

F.R.D. 412, 414-15 (C.D. Ill. 1985); City of Yonkers v. Otis Elevator Co., 106 F.R.D. 524, 525 (S.D.N.Y. 1985).

The second reason why CFI's motion for leave to amend will be denied is that amendment would be futile.  CFI's counterclaim for breach of fiduciary duty is grounded upon Crabtree's alleged breach of his fiduciary duties to the corporation as its Chief Operating Officer for Sales & Marketing.  Those duties are separate from any duty that arises under ERISA and therefore, this counterclaim is not preempted by ERISA.  (Docs. 39, 57).  Section 1132(a)(1)(3) provides that a participant, beneficiary, or fiduciary can bring a civil action "to obtain other equitable relief."  The proposed counterclaim does not allege that CFI is a participant, beneficiary, or fiduciary of the Plan.

Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title."  29 U.S.C. § 1002(21)(A).  CFI has not alleged that it satisfies any of these criteria and the Plan is administered by Defendant, Central Florida Investment, Inc. Deferred Compensation Plan Administrator; not CFI.  (Doc. 1 ¶¶ 1, 9 ).

The Plan is a "top hat" plan.  "A top hat plan is 'a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees[.]'" Holloman v. Mail-Well Corp., 443 F.3d 832, 837 (11th Cir. 2006) (internal citations omitted) (quoting Goldstein v. Johnson & Johnson, 251 F.3d 433, 435 (3d Cir. 2001)).  Courts hold that "a top hat administrator has no fiduciary obligations" and that "it is well established in the case-law that there is no cause of action for breach of fiduciary duty involving a top hat plan."  Goldstein, 251 F.3d at 443.

For these reasons, CFI lacks standing to add a counterclaim for rescission under ERISA.

Third, the proposed counterclaim adds a new allegation that "CFI rescinded the [Agreement] and notified Crabtree of the rescission."  (Doc. 58-1 ¶ 41).  The addition of this averment at this stage in the case, particularly in view of Siegel's deposition testimony, would be unduly prejudicial to Crabtree.

Now, CFI's motion for leave to amend its counterclaim (Doc. 58) is DENIED.

B.     Plaintiff's Amended Motion for Protective Order and Incorporated Memorandum of Law and Request for Oral Argument (Doc. 52)

By the time the parties' motions were argued, the only issues raised by Crabtree's motion for protective order that were unresolved concerned the relevant time period for discovery and the subpoena CFI served on the Firm.  The Court interrogated counsel and based upon their responses and a review of the record, finds that the relevant time period for discovery is January 1, 2008 through

-9-

December 31, 2010.  To the extent CFI seeks discovery outside this time frame, Crabtree's motion for protective order is GRANTED.

At the hearing, counsel explained that Crabtree has engaged the Firm on two occasions.  First, the Firm was employed to negotiate his employment agreement with Planet Hollywood.  Second, it was engaged for this lawsuit.  The Firm has separate engagement agreements with Crabtree for these matters.  CFI's subpoena essentially requires the production of all non-privileged information the Firm has concerning Crabtree and Planet Hollywood.  (Doc. 52-7).  While some information has been provided, the Firm objects to any further discovery on the grounds that CFI is engaged in a fishing expedition, the information sought is protected by the attorney-client and work product privileges, and CFI has already obtained all relevant, non-privileged information from other sources.  (Doc. 52). The Firm did not produce a privilege log but Crabtree's attorney generally explained the basis for the Firm's assertion of privilege at the hearing.  What CFI is most interested in is the Firm's first engagement agreement with Crabtree because CFI believes it will likely be relevant evidence concerning when the negotiation of Crabtree's employment by Planet Hollywood commenced.

While the Court has denied CFI's motion for leave to amend, Defendants still have affirmative defenses and a counterclaim based upon Crabtree's alleged disloyalty and they are entitled to engage in discovery concerning those matters. CFI does not seek and there is no basis to compel the disclosure of attorney-client or work product privileged information but under these circumstances, it is appropriate for the Firm to produce for inspection and copying, its first engagement

-10-

agreement with Crabtree.  The agreement can be redacted to conceal any attorney-client, work product or economic information it may contain.  Economic information includes information concerning the nature of the fee as fixed, contingent or otherwise; the amount of any retainer; the amount of the fee; hourly rates; cost deposits; agreements as to costs; and any other information that would inform Defendants of the financial arrangement between Crabtree and his lawyers.  In all other respects, the amended motion for protective order is GRANTED.

     C.    CFI's Motion to Compel Supplemental Discovery Responses from Plaintiff David Crabtree (Doc. 65)

In keeping with the Court's ruling on Crabtree's amended motion for protective order, CFI's motion to compel is GRANTED to the extent it seeks to compel (1) discovery during the period January 1, 2008 through December 31, 2010 and (2) the disclosure of the Firm's first engagement agreement with Crabtree.  The motion is DENIED in all other respects.

     D.    CFI's Motion to Extend Discovery Deadline and Request for Oral Argument on this Motion (Doc. 66)

CFI needs additional time to complete discovery.  It argues that discovery has been delayed by Crabtree and the non-parties upon whom it served subpoenas and that until it receives the necessary documents, further depositions would be a waste of time.  Crabtree contends that CFI finds itself in this position because it requested overbroad discovery, has been unwilling to compromise, and gambled that the Court would give it more time.  Crabtree also argues that CFI is seeking discovery in hopes of discovering facts to support its counterclaim; not to defend

Crabtree's claims.  The Court finds that an extension of the discovery deadline is appropriate so long as the district judge has sufficient time to decide dispositive and Daubert motions and the trial is not delayed.  At the hearing, Crabtree stated his intent to file a motion for summary judgment.  Now, CFI's motion for additional time to complete discovery is GRANTED as follows:

      New Discovery Deadline:                              May 15, 2013

      New Deadline for Dispositive and Daubert Motions:    June 17, 2013

No other deadlines shall be changed.  The dates established in the Court's Case Management and Scheduling Order (Doc. 30), as modified by this Order, shall govern the progression of this case.

      E.    <u>Other Matters</u>

CFI's request that the Court compel Crabtree to consent to AOL producing email from his account is not properly before the Court; neither is CFI's request that the Court consider whether it has completed its deposition of Crabtree  Accordingly, I decline to render a decision on either issue.

IT IS SO ORDERED.

DONE AND ORDERED in Orlando, Florida, on March 14, 2013.

                                    THOMAS B. SMITH
                                    United States Magistrate Judge

Copies to all Counsel